# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VIGINIA G. DAVIS, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-07-231-SPS |

## OPINION AND ORDER

The claimant Virginia G. Davis requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and the case is REMANDED for further proceedings by the ALJ.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless,

---

[1] Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work she can perform existing in significant numbers in the national economy, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

the Court must review the record as a whole, and "[t]he substantiality of [the] evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on July 4, 1984, and was twenty-two (22) years old at the time of the administrative hearing. She has a limited tenth grade education and has previously worked as a cashier/service worker. The claimant alleges she has been unable to work since May 31, 2004, due to depression, obesity, and pain in her back and left knee.

## Procedural History

On June 30, 2004, the claimant filed this application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401- 34, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. The application wase denied. ALJ Charles Headrick conducted an administrative hearing and determined that the claimant was not disabled on January 5, 2007. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant's problem with her left knee and her obesity were severe impairments (Tr. 15), but that she retained the physical residual functional capacity ("RFC") to perform sedentary work, *i. e.*, she could lift/carry ten pounds occasionally but not frequently, and she could

stand/walk for two hours and sit for six hours of an eight hour work day with normal breaks (Tr. 16). The ALJ also found that "the claimant's depression is mild and situational, and would have only a minimal effect on her ability to perform work-related activities." (Tr. 16). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was other work she could perform existing in significant numbers in the regional and national economies, *e. g.*, sedentary order clerk, sedentary machine operator, and sedentary assembler (Tr. 20).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly evaluate her mental impairment; and (ii) by failing to properly evaluate her credibility. The Court finds that the decision of the Commissioner must be reversed and the case remanded because the ALJ failed to properly evaluate all of the medical opinions in the record.

The claimant underwent a mental status evaluation with Beth Teegarden, D.O., in August 2005. She complained of depression, weight and knee problems, and back and chest pain. She reported depression since the motor vehicle accident ("MVA") that caused her knee injury resulting in chronic pain and the loss of her job and income; decreased energy; inability to sleep; constant ruminating regarding her problems; very poor energy levels; feelings of inadequacy and worthlessness; occasional feelings that life is not worth living, but no suicidal ideation; a 3/10 mood rating; poor appetite, but seventy pound weight gain; anhedonia; uncontrolled crying; and chest pain or heaviness with tingling in left fingers that resolves when she sits and calms herself (Tr. 147-48). Dr. Teegarden examined the claimant

and found her to be depressed with a mood congruent affect (Tr. 149). She noted no limitations in speech, language, thought processes or content, concentration, memory, insight or judgment, but did note chronic pain due to physical ailments in addition to moderate to severe depression (Tr. 148-49). Dr. Teegarden assessed the claimant with moderate to severe, chronic, Major Depressive Disorder (single episode) (Tr. 149). The physician indicated the claimant's depression had not yet been treated, but that her "hope would be that [the claimant] would respond to antidepressant therapy . . . although unfortunately, with chronic pain, it's hard to get complete remission with depression." (Tr. 149). Dr. Teegarden continued to note that the claimant further struggled due to a lack of health care access "which is just going to lead to an exacerbation of all these problems." (Tr. 149).

In September 2004, psychologist C. M. Kampschaefer reviewed the claimant's medical records and completed a Psychiatric Review Technique ("PRT") form based on affective disorders. She determined that the claimant had mild degrees of limitation in activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence or pace with one or two episodes of decompensation of an extended duration (Tr. 151-64). Dr. Kampschaefer summed up her conclusions by finding that while the claimant "has been depressed since she [was] injur[ed] in a MVA, . . . has gained 70 lbs, cries," and has decreased sleep, energy and self-esteem, she also is "not psychotic, [is] well-groomed, [has] clear speech, [with] memory [and] cognitive abilities intact, . . . ADLs are restricted by physical, not mental [and she] says she 'love[s] to visit people.'" (Tr. 163).

"An ALJ must evaluate every medical opinion in the record, *see* 20 C.F.R. §[§] 404.1527(d), [416.927(d)], although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). *See also* Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *4 ("[T]he [ALJ] . . . must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists. . . . RFC assessments by State agency medical or psychological consultants or other program physicians or psychologists are to be considered and addressed in the decision as medical opinions from nonexamining sources about what the individual can still do despite his or her impairment(s)"). The ALJ failed to follow this directive in this case. For example, the ALJ failed to properly analyze the functional assessment provided in consulting physician Dr. Teegarden's Mental Status Examination ("MSE"). He mischaracterized some of Dr. Teegarden's findings, *e. g.*, he noted some of the claimant's positive statements (but ignored her negative statements about her psychological condition) and stated that the claimant lacked "access to healthcare or the money for medications [and that] Dr. Teegarden felt the claimant would respond to antidepressant therapy" (Tr. 16), but Dr. Teegarden actually stated that the claimant had moderate to severe depression and had not been treated due to a lack of health care and money for prescription treatment, and that "[m]y *hope* would be that *she would respond* to

antidepressant therapy . . . although unfortunately, with chronic pain, it's hard to get complete remission with the depression. [Her] struggles with the difficulty of not having access to health care. . . is just going to lead to an exacerbation of all these problems." (Tr. 149) [emphasis added]. The ALJ also relied on some of Dr. Teegarden's findings but ignored those inconsistent with his determination as to the claimant's mental status, e. *g.*, Dr. Teegarden's finding that the claimant suffered from "Major Depressive Disorder, single episode, chronic, moderate to severe" (Tr. 149). It is improper for an ALJ to support his disability determination by "picking and choosing" medical evidence in this way. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper."). Instead, the ALJ should discuss the evidence that supports his decision and explain his rejection of evidence that does not. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

The ALJ also failed to properly analyze the opinions expressed by treating physician Dr. James C. Mayoza, M.D. Although he found that Dr. Mayoza's opinions were not entitled to controlling weight (Tr. 18), he failed to say what weight he was giving those opinions.

*See, e. g., Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003), *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4. Further, if the ALJ intended to reject any of Dr. Mayoza's opinions outright (as he appears to have done here), he was required to give specific legitimate reasons. *See Watkins,* 350 F.3d at 1301 ("[I]f the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so."), *citing Miller v. Chater,* 99 F.3d 972, 976 (10th Cir. 1996), *quoting Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987).

The ALJ also referenced "[t]hree medical experts with the state agency [who] also felt that the claimant could perform at least sedentary work activity (Exhibit 8F and 13F)." (Tr. 19). It is apparent he did not adopt those assessments because they included postural limitations the ALJ did not include in the claimant's RFC (*compare* Tr. 16 *with Tr.* 129-36, 166-73). The ALJ did not, however, explain the weight he *did* assign to those opinions or his reasons for adopting certain limitations while rejecting others.[2]

---

[2] There is some question as to which opinions the ALJ was actually considering when he discussed the "[t]hree medical experts with the state agency [who] also felt that the claimant could perform at least sedentary work activity (Exhibit 8F and 13F)." (Tr. 19). Exhibits 8F and 13F consist of *two* state agency medical experts, *not* three, and the ALJ failed to even mention the two Consultative Examinations ("CE") performed by examining physicians. *See* Tr. 112-19, 122-27. On remand, the ALJ should evaluate *every* medical opinion in the record, be specific as to which opinion he is considering, and discuss the weight given to each opinion accordingly.

Because the ALJ failed to properly evaluate all the medical opinions in the record, the decision of the Commissioner must be reversed and the case remanded so the Court can assess "whether relevant evidence adequately supports the ALJ's conclusion." *Clifton*, 79 F.3d at 1009. Because further analysis by the ALJ may affect his other determinations, the Court declines to address the claimant's other contentions of error at this time. If the ALJ *does* find that the claimant has additional functional limitations, he should redetermine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 29th day of September, 2008.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**